UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Ricky Hughes,   Civil No. 19-2733 (DWF/LIB)

    Plaintiff,

v.

                                      MEMORANDUM
Wisconsin Central Ltd.,   OPINION AND ORDER
Portaco, Inc., and Racine Railroad
Products Inc.,

    Defendants.

## INTRODUCTION

This matter is before the Court on separate motions for summary judgment filed by Defendants Racine Railroad Products, Inc. ("RRP") (Doc. No. 165), Portaco, Inc. ("Portaco") (Doc. No. 178), and Wisconsin Central Ltd. ("WCL") (Doc. No. 184). For the reasons set forth below, the Court grants the motions.

## BACKGROUND

In 2016 and 2017, Ricky Hughes ("Hughes" or "Plaintiff") worked at WCL maintaining railroad tracks. Plaintiff alleges that he was injured in two accidents, both occurring on the job at WCL. (*See generally* Doc. No. 33 ("SAC").) The first accident occurred on October 24, 2016, when Plaintiff was working with a crew to raise a low section of track using "track jacks." The second accident occurred on August 8, 2017, and involved a hydraulic "spike puller" tool. RRP manufactured the spike puller and distributed it to Portaco, which then supplied it to the railroad where it was eventually

used by Plaintiff.  Plaintiff's lawsuit against WCL was brought under the Federal Employers Liability Act ("FELA"), 45 U.S.C. § 51, *et seq*.  In addition, Plaintiff has asserted pendant state-law claims against RRP and Portaco based on strict liability and negligence arising out of an alleged defective condition of the spike puller, as the manufacturer and distributor, respectively.

On May 2, 2012, years before the accidents, Plaintiff filed a voluntary Chapter 13 petition in the United States Bankruptcy Court for the District of Minnesota.  (Doc. No. 75 ("Nissen Aff.") ¶ 1, Ex. A.)  At the same time, Plaintiff filed the following:

- Schedule B—Personal Property, requiring him to list "contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims . . . [with] estimated value of each."  (*Id*. at 10).  In response, Plaintiff checked "None."  (*Id*.)

- Schedule C:  Property Claimed as Exempt, requiring him to list the property he claimed as exempt from creditors, the value of such property, the value of the claimed exemption, and the laws specifying the exemption.  (*Id*. at 12.)

- Statement of Financial Affairs, requiring him to list all suits and administrative proceedings to which he was a party within one year immediately preceding the filing of his bankruptcy.  (*Id*. at 30.)

- Plaintiff listed $106,313 of unsecured debt.  (*Id*. at 6.)

In addition, Plaintiff received and signed the Notice of Responsibilities of Chapter 13 Debtors and Their Attorneys, which provides the rules debtors must follow.

2

Specifically, the Notice states that the Chapter 13 debtor shall:

> Prior to and throughout the case, timely provide the attorney with full and accurate financial and other information and documentation the attorney requests, INCLUDING BUT NOT LIMITED TO:
> . . .
> 14. Information and documents related to any lawsuits in which the debtor is involved before or during the case or claims the debtor has or may have against third parties.

(Nissen Aff. ¶ 6, Ex. F. at 3-4.)

On February 9, 2018, after the accidents underlying Plaintiff's personal injury claims occurred, the bankruptcy court entered an order discharging Plaintiff's debt. (Nissen Aff. ¶ 3, Ex. D.)  In the Trustee's Final Report and Account, the trustee notes that $81,045.53 of Plaintiff's unsecured debt had been discharged without full payment.  (*Id*. ¶ 5, Ex. E at 1.)  On March 15, 2018, Plaintiff's bankruptcy was closed.  (*Id*. ¶ 3, Ex. C.)

Plaintiff did not inform the Bankruptcy Court or Trustee of his FELA personal injury claims.  (*See generally* Doc. No. 71 ("Gelhar Aff.") ¶, Ex. 1 ("Hughes Dep."); *id*. ¶ 7, Ex. 2 ("Docket Report").)  In addition, during the pendency of the Chapter 13 case, the Trustee moved to have the case dismissed several times based on Plaintiff's failure to turn over sums. (Docket Report; Gelhar Aff. ¶ 10, Ex. 5; *id*. ¶ 11, Ex. 6.)  Further, Plaintiff worked with WCL's Risk Mitigation Officer to report his injuries, obtain payment for medical expenses, and obtain Railroad Retirement Board supplemental benefits.  (Gelhar Aff. ¶ 14, Ex. 9 ("Moller Aff."); Hughes Dep. at 37-38, 121-23; Gelhar Aff. ¶¶ 8-10, 3-5; *see also* Gelhar Aff. ¶ 2. Ex. 1.1.)  In applications for benefits dated November 7, 2016, and August 22, 2017 (before the bankruptcy case was closed),

3

Plaintiff answered "yes" to the question of whether he had filed or expected to file a lawsuit for personal injury.  (Doc. No. 125 ("Turner Aff.") ¶¶ 2-3.)

Plaintiff filed this lawsuit on October 17, 2019, against Canadian National Railway Co. and WCL.  (Doc. No. 1.)  Plaintiff amended his Complaint twice, adding Portaco and RRC.  (Doc. Nos. 21, 33.)  Defendants moved for summary judgment.  On August 27, 2021, Plaintiff filed an Application to Reopen the Bankruptcy, and the case was reopened the same day.  (Doc. No. 98 ("Gunzburg Aff.") ¶ 2, Ex. A.)  The Summary of Schedules in the bankruptcy case was amended on August 30, 2021, to reflect the potential personal injury and FELA claims as assets of the bankruptcy estate.  (*Id*. ¶ 2, Ex. B.)

By Order dated October 29, 2021, the Court denied Defendants' motions for summary judgment without prejudice to Defendants' right to reassert them during the proceedings in Bankruptcy Court or before this Court at a later date.  The case was stayed pending a decision in Bankruptcy Court on a Motion by Plaintiff to approve a stipulation with the Trustee reopening the bankruptcy case and allowing Plaintiff to schedule this action as a contingent unliquidated claim.  (Doc. No. 135.)  The Bankruptcy Court has since denied that motion.  (Doc. No. 180 ("Nissen Aff.") ¶ 17, Ex. Q.)  Defendants now refile their motions for summary judgment.

## DISCUSSION

Summary judgment is proper if there are no disputed issues of material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The Court must view the evidence and the inferences that may be reasonably drawn from the

4

evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. Cnty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

As an initial matter, Plaintiff argues that the Defendants' motions for summary judgment are simply motions for reconsideration and that they offer no new evidence and rely on the same arguments. The Court disagrees. The Court denied prior motions for summary judgment but did so "without prejudice to Defendants' right to reassert them . . . before this Court at a later date." (Doc. No. 135 at 8.) Therefore, the Court properly considers the present motions.

**A.     Standing**

RRP and Portaco argue that Plaintiff lacks standing to bring claims against them because Plaintiff's underlying claims arose during the pendency of his Chapter 13 bankruptcy and therefore automatically became property of the estate. Plaintiff argues that the Bankruptcy Court addressed standing and held that the lawsuit vested in the debtors upon discharge as of February 9, 2018. (*See* Doc. No. 190-1, Ex. A at 10.)

Pursuant to 11 U.S.C. § 541(a)(1), "all legal or equitable interests of the debtor in property as of the commencement of the case" becomes property of the bankruptcy estate. Chapter 13 expands the definition of estate property to include "all property . . . specified in [§ 541] that the debtor acquires *after* the commencement of the case but *before* the case is closed." 11 U.S.C. § 1306(a)(1) (emphasis added). A debtor's legal or equitable interests in property include all causes of action that belong to the debtor. *In re Ozark Rest. Equip. Co.*, 816 F.2d 1222, 1225 (8th Cir. 1987).

A bankruptcy trustee has standing to pursue claims or causes of action that belong to the estate. *See In re Petters Co., Inc.*, 565 B.R. 154, 160 (D. Minn. 2017). However, a Chapter 13 debtor in possession may prosecute an action on behalf of the bankruptcy estate. Fed. R. Bankr. P. 6009 ("[T]he trustee or debtor in possession may . . . commence and prosecute any action or proceeding in behalf of the estate before any tribunal."); *see also, e.g.*, *Dufrene v. ConAgra Foods, Inc.*, 196 F. Supp. 3d 979, 982 (D. Minn. 2016) (concluding that a Chapter 13 debtor in possession has standing to bring a suit in the debtor's name on behalf of the bankruptcy estate); *Van Horn v. Martin*, Civ.

6

No. 13-74, 2015 WL 925895, at *1 (E.D. Ark. March 3, 2015) (not reported), *aff'd* 812 F.3d 1880 (8th Cir. 2016).

Here, Plaintiff's FELA claims became property of the bankruptcy estate because they arose after the bankruptcy case commenced but before it was closed. There is no dispute that Plaintiff did not list these claims on his schedule of assets and liabilities. Plaintiff attempted to reopen the bankruptcy proceeding, but the Bankruptcy Court ruled that it was too late to modify the plan. Therefore, it is now clear that Plaintiff is unable to pursue his claims on behalf of the estate.[1] Because Plaintiff is bringing the claim for himself, and not on behalf of the estate, he lacks standing.

**B.     Judicial Estoppel**

Defendants also argue that Plaintiff's claim is barred by judicial estoppel. Judicial estoppel is an equitable doctrine that "prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." *Van Horn v. Martin*, 812 F.3d 1180, 1182 (8th Cir. 2016) (citing *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)). In deciding whether to apply the doctrine, courts consider three factors: (1) whether a party's later position is clearly inconsistent with its previous position; (2) whether the party succeeded in persuading the first court to accept

---

[1]     At the time of Defendants' original motions for summary judgment, Plaintiff had submitted evidence that the bankruptcy case had been reopened and that he amended his schedules to include the FELA claims. Plaintiff submitted that he moved to reopen the case so his FELA claims could be pursued **on** behalf of the estate. However, because the Bankruptcy Court has denied Plaintiff's motion to reopen, Plaintiff is foreclosed from litigating on behalf of the bankruptcy estate.

its position; and (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage if not estopped. *Id.*; *see also*, *e.g.*, *Jones v. Bob Evan Farms*, 811 F.3d 1030, 1033 (8th Cir. 2016) (explaining that a party who has filed for bankruptcy may be estopped from pursuing a claim not disclosed in bankruptcy filings).

The record clearly establishes that at the time of both injuries, Plaintiff had an open plan for Chapter 13 bankruptcy protection and that Plaintiff failed to inform the Bankruptcy Court or Trustee of the pending personal injury claims. By failing to disclose his claims in the bankruptcy proceeding, Plaintiff represented that the claims did not exist. Thus, by discharging Plaintiff's debts, the bankruptcy court also adopted the position that Plaintiff's personal injury claims did not exist. Plaintiff now takes the position that his personal injury claims exist, which is clearly inconsistent with the position Plaintiff took in the bankruptcy proceedings.[2]

Turning to the third factor, the Court considers whether Plaintiff would derive an unfair advantage if not estopped. The answer is yes. Plaintiff knew at the time that the bankruptcy was pending that he had these personal injury claims and that he planned to pursue litigation. Plaintiff, however, did not disclose the claims to the Trustee. The bankruptcy court relied on Plaintiff's disclosures when it discharged his debts. This left Plaintiff with the potential to attain monetary relief for the personal injury claims. Plaintiff argues that the creditors did not suffer any harm from any inconsistent position

---

[2]   While Plaintiff attempted to reopen the bankruptcy case, the Bankruptcy Court denied that motion.

he took and that he acted in good faith. The Court disagrees. Plaintiff's potential damages arising from this lawsuit would go directly to him and not to his creditors. Therefore, these creditors have been deprived of the opportunity to receive payments from any proceeds he might have recovered. The third factor is satisfied.[3]

Finding that all three factors are satisfied, the Court finds that Plaintiff is judicially estopped from asserting his claims in this lawsuit.

## ORDER

Based upon the foregoing, and the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. The Motions for Summary Judgment filed by Defendants Racine Railroad Products, Inc. ("RRP") (Doc. No. [165]), Portaco, Inc. ("Portaco") (Doc. No. [178]), and Wisconsin Central Ltd. ("WCL") (Doc. No. [184]) are **GRANTED**.

2. This action (Doc. No. [33]) is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Dated: February 2, 2023    s/Donovan W. Frank
　　　　　　　　　　　　　　 DONOVAN W. FRANK
　　　　　　　　　　　　　　 United States District Judge

---

[3] The Court acknowledges that there is no clear record of malice on Plaintiff's part, a point noted in the Court's prior order. Even so, a finding of intent or malice is not required. And the record clearly indicates that the bankruptcy file represented Plaintiff's assets as not including the pending FELA claims at the time discharge was granted, despite Plaintiff's knowledge of his claims and intent to file a lawsuit. The trustee was not privy to the existence of this asset when Plaintiff's debt was discharged and Plaintiff's motive to conceal may be inferred. *See Eastman v. Union Pac. R.R. Co.*, 493 F.3d 1151, 1159 (10th Cir. 2007) (noting that when a debtor has both knowledge of the claims and a motive to conceal, courts infer deliberate manipulation).