IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA
FIFTH DIVISION

RICKY HUGHES,

          Plaintiff,

v.                                                        Court File No. 19-cv-02733-DWF-LIB

WISCONSIN CENTRAL LTD.,
PORTACO, INC. and
RACINE RAILROAD PRODUCTS,
INC.,

          Defendants.

**MEMORANDUM IN OPPOSITION TO RACINE'S
MOTION FOR SUMMARY JUDGMENT**

    Plaintiff, RICKY HUGHES, by his attorneys, RIDGE & DOWNES, and in opposition to the motion for summary judgment filed by Defendant, RACINE RAILROAD PRODUCTS, INC. ("Racine"), hereby submits his memorandum of law.

## **INTRODUCTION**

    As alleged in the Second Amended Complaint (Doc. 33), Plaintiff was injured when a hydraulic spike puller manufactured by Racine Railroad Products ("Racine") and rebranded and distributed by Portaco mechanically and structurally failed during normal spike pulling operations. As to Racine, Count V states a cause of action for strict liability and specifically alleges that the spike

puller was defective and unreasonably dangerous at the time it left the control of Racine for several reasons, including that it was structurally unsound and failed under reasonably anticipated pressures, its internal hydraulic system was defective and unsafe, it lacked adequate warnings, and it lacked adequate instructions. Count VI sounds in negligence alleges that Racine was negligent for substantially the same reasons.

Racine has filed a motion for summary judgment. Although it is not clear if the motion is directed to Count V or Count VI, or both, Plaintiff will assume for the purpose of this memorandum that it is directed to both counts. The thrust of the motion appears to be that Racine is entitled to judgment as a matter of law because Plaintiff is "unable to establish how any claimed defect in the spike puller caused his accident." Thus, Racine's motion appears to be based solely on a causation defense.

## **STATEMENT OF FACTS**

1. On February 17, 2021, Rick Hughes was deposed and did testify, under oath, as follows:

    a) When Craig Cook of Portaco delivered the two-stage spike puller to the job site, it looked like a new tool and he did not see any problems with it (Hughes Deposition Transcript, P. 90);

    b) Craig Cook did not offer to demonstrate how to operate it (Hughes Deposition Transcript, Pp. 261-262);

    c) He estimates that he removed 15 to 20 spikes before the incident (Hughes Deposition, P. 93);

    d) When he was using the spike puller, it had the jerkiness of a single stage spike puller (Hughes Deposition, P 95);

    e) At the time of the incident, he was standing on the outside of the track (Hughes Deposition, P. 188);

    f) The spike he was pulling at the time of the incident was no different from the other spikes he pulled with the subject spike puller (Hughes Deposition P. 189);

    g) When he operated the spike puller, the spike puller pulled violently forward and pulled him across the track. (Hughes Deposition, Pp. 95-97).

The transcript of the deposition of Rick Hughes is attached hereto as Exhibit A.

    2.    On March 2, 2021, Patrick Cronin was deposed and did testify, under oath, as follows:

    a) He is the Director of Operations and Product Development at Portaco (Cronin Deposition Transcript, P. 14);

    b) Portaco purchased two-stage spike pullers from Racine Railroad Products (Cronin Deposition Transcript, Pp. 18-19);

    c) Portaco would repaint the Racine spike pullers and put its own logo decal and warning stickers on the product (Cronin Deposition Transcript, Pp. 22, 31-32);

    d) His sales manager, Craig Cook, inspected the subject spike puller following the incident that injured a CN employee (Mr. Hughes) and made a note on of his inspection on August 23, 2017 (Cronin Deposition Transcript, P. 58);

    e) Cook's note states that he inspected two-stage puller and observed that the lag driver lower chute was blown out and the jaws were loose, and that the spike puller looked similar to the defective spike puller returned from UP in Idaho (Cronin Deposition Transcript, P. 58);

    f) Cook reported that the employee had been out of work since the accident (Cronin Deposition Transcript, P. 58);

g) Upon learning of an incident like this one involving an injury, it was Portaco's practice to take possession of the tool, secure it, and make certain it was not altered or destroyed (Cronin Deposition Transcript, Pp. 119-120);

The transcript of the deposition of Patrick Cronin is attached hereto as Exhibit B.

3. On March 10, 2021, Craig Cook was deposed and did testify, under oath, as follows:

a) He was the sales manager for Portaco (Cook Deposition Transcript, P. 10);

b) He was hired by Pat Cronin (Cook Deposition Transcript, P. 11);

c) At the time he delivered the subject spike puller to the Pokegama yard, it was in new condition in terms of hours of use (Cook Deposition Transcript, P. 75);

d) With regard to the subject spike puller, he may have provided a product catalog and sell sheets when he delivered it to the Pokegama yard (Cook Deposition Transcript, Pp. 41-42);

e) However, he did not deliver a copy of the operator's manual (Cook Deposition Transcript, P. 42);

f) He does not recall whether he gave a demonstration of how to operate the spike puller (Cook Deposition Transcript, P. 43-44);

g) If he learned of a defective tool, it was his normal practice to bring it back to the shop to be analyzed (Cook Deposition Transcript, Pp. 26-27);

h) The incident involving the spike puller was discussed on the following Monday at Portaco's normal conference call and it was decided that he would pick up the tool from the railroad and bring it back to Portaco for evaluation (Cook Deposition Transcript, Pp. 61-65);

i) Craig Cook's note states that he inspected two-stage puller that injured a CN employee. Went on track to where accident happened. The spikes being pulled were in older ties and should have been an easy pull. The fact that the puller failed on such an easy job is troubling. Lag driver lower chute blown out. Jaws are loose. The spike puller looks similar to the

4

defective spike puller returned from UP in Idaho. CN was questioning our testing of products prior to shipping. I ensured them that the product was tested and used on two other demos without issue prior to their testing. The employee has been out of work since the accident. They will test another one, but if we have another failure, they will not purchase two-stage spike pullers from Portaco (Cook Deposition Transcript, P. 58);

The transcript of the deposition of Craig Cook is attached hereto as Exhibit C.

4. On February 25, 2021, Anthony Blank was deposed and did testify, under oath, as follows:

a) In 2016-2017, he was employed by WCL as section foreman (Blank Deposition Transcript, P. 8);

b) When Craig Cook delivered the spike puller to the Pokegama location, he brought a small pamphlet describing the product, but it was not the operator's manual (Blank Deposition Transcript, P. 19);

c) Craig Cook never provided the operator's manual for the spike puller(Blank Deposition Transcript, P. 21);

d) Craig Cook never demonstrated or offered to demonstrate how to use the spike puller (Blank Deposition Transcript, P. 21);

e) He simply dropped it off and left the parking lot (Blank Deposition Transcript, P. 21);

f) After the spike puller incident, he observed that the chute was bent out, split up, that the jaw was twisted sideways, and that it was not a useable machine (Blank Deposition Transcript, P. 26);

g) Following the incident, Craig Cook came and picked up the spike puller (Blank Deposition Transcript, P. 29-30);

h) He put the spike puller in the back of Craig Cook's truck and watched him drive away (Blank Deposition Transcript, P. 35);

The transcript of the deposition of Anthony Blank is attached hereto as Exhibit D.

5. As referenced above, when Racine Railroad Products sold the subject hydraulic spike puller to Portaco, it came with a Racine operator's manual. The Racine Operating and Service Manual specifically referenced warnings to the user, including: CENTER HEAD OF SPIKE AS INDICATED! and that SIDE LOADING WILL DAMAGE EQUIPMENT! Additionally, the Racine Operating and Service Manual indicated that a warning label containing the same information was affixed to the spike puller. See Figure 7 in the Racine Operating and Service Manual below.

Additionally, Racine's manual defined Warning as:

> ***WARNING!*** An operating procedure, practice, or condition, etc., which may result in injury or death if not carefully observed or followed.
>
> **General Safety Precautions and Devices**
>
> ***WARNING!*** Failure to follow safety precautions when operating this equipment can result in serious injury or death to the operator or other persons in the area.
>
> Observe the following precautions whenever you are operating, working on or near this equipment.
> Always wear appropriate work clothing when operating this equipment. DO NOT WEAR loose clothing, jewelry, radio belts, etc., when you are operating, working on or near this equipment.

A copy of Racine's operator's manual is attached hereto as Exhibit E. See Page 1-1.



**Figure 7   Hydraulic Spike Puller - Extracting Jaws.**

A copy of the Racine Operating and Service Manual that was produced by Racine Railroad Products during the course of discovery is attached hereto as Exhibit E.

6. Racine Railroad Product's retained engineering expert, Hernan Mercado-Corujo, PE, has opined in his report *that the deformation seen on the subject spike puller following the alleged incident, shown in Figure 2, is consistent with the circumstances described by both Mr. Espinoza and Mr. Ries. That is, caused by the tool not being centered on the spikes and the spikes dragging inside*

7

*the chute, possibly over time.* A copy of Hernan Mercado-Corujo's report is attached hereto as Exhibit F.

7. The reports of Plaintiff's retained engineering expert, William Keefe, PE, dated March 29, 2021 and July 18, 2022 (subject to Magistrate Judge Brisbois' order (Doc. 193) striking portions of the report) are attached hereto as Exhibits G and H, respectively. Mr. Keefe agreed that the deformation on the chute of the subject spike puller was consistent with damage that could be caused by extracting a spike, which was sufficiently off-center of the jaws to contact the chute.

8. A true and accurate copy of Plaintiff's F.R.C.P. 26(a)(2)(B) is attached hereto as Exhibit I.

## ARGUMENT

### A. **Racine's argument that Plaintiff cannot establish causation is without merit.**

Racine cites *Johnson v. Zimmer, Inc.* 2004 U.S. Dist. LEXIS 6007; 2004 WL 742038, at 19 (D.Minn. Mar. 31, 2004), in support of its assertion that Plaintiff cannot establish causation. However, in *Johnson*, the court stated:

> The Court's focus should be on whether the testimony is grounded upon scientifically valid reasoning or methodology. *United States v. Dico, Inc.*, 266 F.3d 864, 869 (8th Cir. 2001). "As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination. Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded." *Banner v. ISP Techs., Inc.*, 259 F.3d 924, 929-30 (8th Cir. 2001) (internal citations and quotations omitted).

In other words, causation usually involves questions of fact for the jury to decide. Also see, *Germann v. F.L. Smithe Mach. Co.*, 381 N.W.2d 503 (Minn. Ct. App. 1986).

Looking at the evidence in the light most favorable to Mr. Hughes, there is ample evidence to support the opinion of Plaintiff's engineering expert, Willam Keefe, P.E., that the design defects in the spike puller caused injury. See reports of William Keefe, P.E. attached hereto as Exhibits G and H. Mr. Keefe identifies specific defects in the design of both the chute and the jaws of the spike puller. As to spike puller causing injury, Racine needs to look no further than its own operator's manual and the warnings contained therein. The manual specifically warns against the risk of injury if the spike is not centered. Therefore, not only was the injury foreseeable, the manual specifically states that an off-centered spike can cause serious injury or death to the operator. Moreover, Mr. Keefe's opinions are totally consistent with the unconroverted testimony of Mr. Hughes.

Racine cites *Patton v. Newmar Corp.*, 538 N.W.2d 116 (Minn. 1995) in support of its contention that there is insufficient evidence to support causation. However, that case is factually distinguishable in that it involved an expert's affidavit with bare bones conclusions.

### B. Plaintiff should not be prejudiced because Portaco lost or destroyed the subject spike puller

The evidence is uncontroverted that Portaco knew of the importance of preserving the subject spike puller because the product failed and Mr. Hughes was

9

injured. In fact, it was Portaco's practice to take possession of the tool, secure it, and make certain it was not altered or destroyed. Mr. Cook was aware of this as well. In fact, he was sent back to WCL to pick up the damaged spike puller and bring it back to the shop. Anthony Blank placed the spike puller in the back of Mr. Cook's truck and watched him drive off. The spike puller was never seen again.

## CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully submits that there are genuine issues of material fact for a jury to decide and therefore Racine's motion for summary judgment must be denied.

Respectfully submitted,

RIDGE & DOWNES

By: */s/ Michael B. Gunzburg*
　　　One of Plaintiffs' Attorneys

RIDGE & DOWNES
230 West Monroe Street
Suite 2330
Chicago, Illinois 60606
312-372-8282 – Ofc
312-372-8560 – Fax
mgunzburg@ridgedownes.com
ARDC No. 6180880